## DOWELL v. APPLEGATE and others.

### (Circuit Court, D. Oregon.   September 9, 1881.)

1. DEED, WHEN VOID UNDER THE INTERNAL REVENUE ACT.
    A deed alleged to have been *made* with the intent to evade the internal revenue act or to defraud the United States is not, therefore, invalid under section 158 (13 St. 294; 14 St. 152) thereof, and to make it so it must also appear that the deed was made without being duly stamped, and with the intent thereby to evade the revenue act.

2. GRANTEE IN DEED.
    Said section 158 only avoids a deed on account of the intent of the grantor therein, and it is immaterial with what intent the grantee receives it, or to what use he puts it.

3. AMENDMENT OF BILL.
    After a demurrer to a bill is allowed, the right to amend rests in the discretion of the court, and leave to amend will not be granted unless it is necessary to promote or attain the ends of justice in the case.

4. CASE IN JUDGMENT.
    A demurrer to a bill being sustained, the plaintiff asked leave to amend, to the effect that a deed to the demurrants was void under said section 158, for want of being duly stamped, which was denied; it also appearing that said parties were *bona fide* purchasers for an adequate consideration.

Suit in Equity "in aid of Execution."

*Addison C. Gibbs* and *B. F. Dowell*, for plaintiff.

*W. Cary Johnson*, for defendants.

DEADY, D. J.   On June 24, 1881, William H. H. Applegate conveyed to Charles and John C. Drain 200 acres of land in Douglas county, by a deed in which the sum of $500 was named as the consideration, having a stamp thereon of the value of 50 cents.   Among other things, this suit is brought to set aside this conveyance as void, because it was not stamped for $2,000, the alleged actual consideration thereof, so as to subject the property described therein to the satisfaction of a judgment for the plaintiff against the defendant Jesse Applegate, upon the ground that J. A. had conveyed the same to his son W. H. H. A. with intent to defraud the plaintiff.   On July 8, 1881, a demurrer to the bill by the Drains was sustained on the ground that it did not appear therefrom that the grantor had omitted to stamp the deed sufficiently with intent to defraud the revenue of the United States.   The plaintiff now moves for leave to amend his bill in this respect, and the defendants object because the plaintiff, as to them, is seeking practically to enforce a forfeiture upon purely technical grounds against innocent purchasers, and therefore ought not to be favored by a court of equity, and because it does not appear but

that the remaining property described in the bill as having been conveyed by J. A. to his children in fraud of his creditors and still in their possession, is sufficient to satisfy the plaintiff's claim. By the equity rule 35, the allowance of an amendment to a bill, after a demurrer thereto has been sustained, is in the discretion of the court. Stated briefly, the proposed amendment is to the effect:

(1) That the deed in question was made and delivered with the intent to defraud the United States; (2) that it was made and delivered by the grantor, and accepted by the grantees, with the intent to evade the provisions of the internal revenue acts; and (3) that the Drains caused said deed to be made and delivered, and used the same, by having it recorded, with intent to evade said acts, and with intent to defraud the United States out of a stamp duty of a value of $1.50.

The allegation that the deed was either made, delivered, accepted, or used with the intent to defraud the United States, is false upon its face. The United States had no interest in this property, or claim upon the grantor, J. A., or W. H. H. A., that would render a conveyance of it to the Drains, or any one else, fraudulent as to it. What the pleader probably had in his mind, but failed to express or allege, is that the deed was made, delivered, accepted, and used without being duly stamped, with intent to evade, defraud, etc. To stamp or omit to stamp a deed is something apart from, and in addition to, the making, delivering, accepting, or using the same; and an allegation that either of these things was done with intent to defraud the United States, or evade its revenue laws, is not an allegation that such deed was made, delivered, accepted, or used without being duly stamped, and is, therefore, immaterial in this suit.

It is also immaterial with what intention the Drains accepted this deed. Section 158 of the internal revenue act (13 St. 293; 14 St. 142) does not make any account of the intention with which a deed is "accepted" or received by the grantee. But in the case of a "bill of exchange, draft, order, or promissory note for the payment of money," it does provide that if such instrument is accepted, negotiated, or paid without being duly stamped, and with the intent to evade the provisions of the same act, it shall be invalid. The reason of this distinction is apparent. Whoever accepts a bill of exchange thereby becomes an active party thereto. In effect and to that extent he makes or emits it,—gives it a new life and circulation,—and the intention with which he does so, so far as the stamp duty is concerned, is placed by the stamp act in the same category as that of the maker.

But in the case of any "instrument or document" other than nego-tiable paper,' the intention or purpose of the party to or for whom it is made or delivered, or the use he puts it to or makes of it, is simply immaterial. Nor is it material in this suit whether the Drains caused this deed to be made within the meaning of the statute or not, and could only become so in an action against them for the penalty imposed by the act. If their grantor omitted to stamp it, as required by law, with the intent to defraud the revenue, it is void, no matter who, or whether any one, caused them to do so. Nor does it appear that the Drains caused this deed to be made, otherwise than by becoming the actual purchasers of the property described therein; and that this did not bring them within the purview or penalty of the statute is too plain for argument.

The proposed amendment is immaterial, and that is a sufficient reason why the motion should be denied. But I do not think this amendment ought to be allowed, even if it contained the allegation that the deed to the Drains is void because the grantor therein made and delivered the same to them without its being duly stamped, and with the intent to defraud the United States.

Amendments to a bill, after a demurrer thereto has been sustained, are not allowed as a matter of right, but rest in the discretion of the court, and are only allowed when they are necessary to promote or attain the ends of justice in the case. *Hunt* v. *Rousmaniere*, 2 Mason, 365.

The case sought to be made against the defendants by the amendment is this: J. A., being a co-surety with the plaintiff on an official bond, is alleged to have conveyed the premises to his son without or upon a grossly inadequate consideration, with intent to defraud the state and the plaintiff, who has since been compelled to pay the bond. But it is admitted that the Drains purchased from the son for a sufficient consideration, and without notice of such fraudulent intent, and are therefore not affected by it. Conceding this, however, it is claimed that the deed to the Drains is void because their grantor only put a stamp of the value of 50 cents on it when he should have put two dollars, with intent to defraud the revenue of the difference; and therefore the property, for the purpose of this suit, must be considered as still held by the son under the fraudulent deed from J. A., and subject to be applied upon the latter's debt to the plaintiff.

But the plaintiff also imputes another, and, in my judgment, a more probable, motive for the omission to stamp the deed sufficiently,

and that is, that the consideration might correspond with that in the deed from J. A. to his son, and thereby give strength to the claim that the former was a *bona fide* transaction based upon an adequate consideration.

It is not at all probable that while the actual consideration of the deed in question was $2,000, that it would be expressed in the deed at $500, merely to save the expense of stamps to the value of $1.50, and at the same time incur thereby a penalty of many times that sum; while it is not improbable that it may for some reason have been done with a view of preserving an apparent uniformity in the considerations of the two conveyances. The two motives could hardly co-exist, and there is such a want of probability as to the former, that, as between them, the latter must be accepted as the true one. But in any event the Drains are innocent purchasers, and not a party to or participant in either alleged fraud or fraudulent intention; and while they may be affected by the invalidity of the deed to them on account of their grantor's fraudulent omission to sufficiently stamp the same, I do not think that justice or equity requires the court to permit the plaintiff to amend his bill, after a demurrer thereto has been allowed, so as to enable him to enforce a claim to the property founded upon such invalidity; particularly as he had ample opportunity to bring the matter before the court by proper allegations in the amended bill to which the demurrer was taken. Besides this, there is much force in the suggestion that the plaintiff ought not to be allowed to proceed against the property conveyed to the Drains, until it appears that the property of J. A., either in his own hands or that of his children, is not sufficient to satisfy his claim.

The motion to amend is denied, and the bill as to the defendants Charles and John C. Drain is dismissed, with costs.